**FILED**

**MAY 14, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

**JUDGE KAPALA
MAGISTRATE JUDGE MAHONEY**

| | | |
|---|---|---|
| NANCY WALSH, | ) | |
| | ) | |
| Plaintiff, | ) | Judge |
| v. | ) | |
| | ) | Case No. |
| ROCKFORD ANESTHESIOLOGISTS | ) | |
| ASSOCIATED, LLC, | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | |

**08 C 50085**

## COMPLAINT

### COUNT I – FAMILY MEDICAL LEAVE ACT

NANCY WALSH (WALSH), by her attorney, GLENN R. GAFFNEY of GAFFNEY & GAFFNEY, for her Complaint against ROCKFORD ANESTHESIOLOGISTS ASSOCIATED, LLC (RAA), pursuant to the Family Medical Leave Act, states:

1.  This cause of action if bought pursuant to the Family Medical Leave Act (FMLA). 29 USC § 2601, et. seq..

2.  Jurisdiction in the U.S. District Court is provided for in a civil action by an employee pursuant to 29 USC § 2617, sec 107 (a)(2).

3.  WALSH is a resident of South Beloit, Illinois.

4.  RAA is a limited liability company registered to do business in Illinois and located in Rockford, Illinois.

5.  WALSH was last employed by RAA as a Certified Registered Nurse Anesthetist (CRNA) and contracted to work at various medical facilities. RAA was the "employer" of WALSH and is a covered employer under the FMLA as defined by the FMLA, as RAA satisfies the requirements of 29 USC §2611sec 101(4) in the following ways:

   (1).    RAA employs 50 or more employees;

   (2).    RAA employs 50 or more employees for each working day during each of 20 or more calendar workweeks.

6.  WALSH was an "employee" of RAA as defined by 29 USC § 2617sec 107(3).

1

7.     WALSH was an "eligible employee" of RAA as defined by 29 USC § 2611, sec. 101(2)(A) in that:

(1).     WALSH was employed by RAA for at least 12 months prior to RAA's adverse action; and

(2).     WALSH was employed by RAA for at least 1,250 hours of service during the 12 months of employment prior to RAA's adverse action.

8.     WALSH was not excluded from the term "eligible employee" as defined by 29 USC§ 2611, sec. 101(2)(B).

9.     Section 105 of the FMLA, 29 USC §2615(a), defines the following as unlawful practices by employers:

(1) To interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title.

(2) To discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title.

10.     As an "eligible employee" pursuant to 29 USC § 2612, sec.102 (a), WALSH was entitled to a total of 12 weeks of leave in any 12 month period because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee."

11.     While employed by RAA WALSH developed a "serious health condition" as defined by 29 U.S.C. § 2611, sec. 101 (11)(B) and as a result WALSH requested FMLA leave for her serious health condition.

12.     WALSH had not taken more than 12 weeks of FMLA leave during the 12 months of employment prior to August 13, 2007.

13.     On or about August 1, 2007 WALSH obtained permission to take a leave of absence because of her serious health condition.  On or about August 12, 2007 WALSH submitted a written request for FMLA leave.

14.     On or about August 13, 2007, RAA interfered with WALSH's entitlement to an FMLA benefit by depriving her of the ability to take FMLA leave to seek treatment and care for her serious health condition.  RAA deprived WALSH of her FMLA entitlement by coercing and extorting WALSH to tender a resignation under duress in exchange for RAA not reporting to the Illinois Department of Professional Regulation that WALSH suffered from a serious health

2

condition thereby constructively discharging WALSH's employment. On August 23, 2007 and September 21, 2007 RAA continued to interfere with WALSH's FMLA entitlement by refusing to accept WALSH'S requests for reinstatement and revocation of her resignation which was procured by the unlawful means of placing WALSH under extreme duress.

15.     As a direct and proximate result of RAA's interference and deprivation of WALSH's entitlement to her FMLA benefits, WALSH sustained damages including lost wages, lost incentives, the value of lost employment benefits, emotional pain and suffering, and the loss of enjoyment of life.

16.     In addition to WALSH's claim that RAA unlawfully interfered with her FMLA rights, WALSH also asserts that she has engaged in FMLA protected activity by making known her serious health condition and making a specific request for FMLA leave.  As a result of WALSH's engagement in FMLA protected activity, RAA retaliated by threatening to report WALSH to the Illinois Department of Professional Regulation because WALSH had a serious health condition, unless she submitted a letter of resignation and thereby effectuated WALSH's constructive discharge by extorting her resignation while WALSH was under duress and refusing to accept a revocation thereof.

17.     RAA's interference, retaliatory acts and deprivation of WALSH's FMLA entitlement was a willful violation which entitles WALSH to liquidated damages in an amount equal to the sum of lost wages, salary, benefits or other compensation denied, plus interest pursuant to 29 USC 2617 sec.107 (a)(1)(A)(iii).19.

WHEREFORE, WALSH seeks judgment against RAA for all legal and equitable relief available pursuant to the FMLA including liquidated damages, interest, and attorney's fees and costs of suit pursuant to 29 USC 2617 sec.107 (a)(3).

## COUNT II – BREACH OF CONTRACT

NANCY WALSH (WALSH) by her attorney, Glenn R. Gaffney of Gaffney & Gaffney, for her Complaint against ROCKFORD ANESTHESIOLOGISTS ASSOCIATED, LLC (RAA), for breach of contract, states:

1.     This Court has supplemental jurisdiction of WALSH's breach of contract claim arising out of a nucleus of operative fact as her Federal claim pursuant to the Family Medical Leave Act.  28 U.S.C.A. §1367.

2.     WALSH is a resident of South Beloit, Illinois.

3.    RAA is limited liability company registered to do business in Illinois and located in Rockford, Illinois.

4.    On or about October 3, 2000, WALSH and RAA entered into an Employment Agreement. A copy of said Employment Agreement is attached hereto as Exhibit A. The Employment Agreement between WALSH and RAA was further supplemented by the CRNA Employee Handbook of RAA which became effective on July 1, 2004. The RAA-CRNA Employee Handbook provided certain employee benefits for WALSH including, but not limited to, vacation paid time off, paid sick time off and FMLA bank accrual. A copy of the Employee Benefit programs (pages 22 through 31) of the Handbook for CRNA employees of RAA is attached hereto as Exhibit B.

5.    During WALSH's tenure of employment she accrued paid vacation time off and also accrued FMLA bank accrual pursuant to the Employee Benefit Programs attached hereto as Exhibit B.

6.    On or about August 1, 2007, WALSH obtained permission to take a leave of absence because she had a serious health condition. On or about August 12, 2007, WALSH submitted a written request for FMLA leave.

7.    On or about August 13, 2007, RAA constructively discharged WALSH by extorting WALSH's resignation while WALSH was under duress.

8.    After WALSH was constructively discharged on or about August 13, 2007, WALSH made repeated attempts to revoke her resignation procured while under duress and RAA failed and refused to accept WALSH's revocation.

9.    As of August 13, 2007, WALSH had accumulated approximately 184 hours of FMLA bank accrual and also had accrued vacation time pursuant to the policy attached hereto as Exhibit B.

10.    As a result of WALSH's serious health condition, she was unable to work for at least 184 regularly scheduled work hours after WALSH was constructively discharged on August 13, 2007.

11.    WALSH has made demand upon RAA for payment of her accrued FMLA sick time bank and vacation time and RAA has failed and refused to make payment thereof.

4

12.     WALSH has performed all conditions precedent which WALSH was required to perform in order to obtain payment of her FMLA accrued time hours and accrued vacation pay pursuant to the policy attached hereto as Exhibit B.

13.     As a result of RAA's failure to pay WALSH her FMLA accrued hours and accrued vacation time, WALSH has sustained damages in an amount in excess of $12,880.00 plus the value of lost benefits.

WHEREFORE, WALSH seeks judgment against RAA in an amount in excess of $12,880.00 plus costs of suit.

## COUNT III – CIVIL EXTORTION

NANCY WALSH (WALSH), by her attorney, Glenn R. Gaffney of Gaffney & Gaffney, for her Complaint against ROCKFORD ANESTHESIOLOGISTS ASSOCIATED, LLC (RAA), for common law civil extortion, states:

1.     This Court has supplemental jurisdiction over WALSH's claim for civil extortion arising out of the same nucleus of operative fact as WALSH's Federal claim pursuant to the Family Medical Leave Act (FMLA).  28 U.S.C.A §1367.

2.     WALSH is a resident of South Beloit, Illinois.

3.     RAA is an Illinois limited liability company located in Rockford, Illinois.

4.     WALSH is a former employee of RAA.

5.     On or about August 1, 2007, WALSH notified RAA that she had a serious health condition and sought permission to take an extended leave of absence.  On or about August 12, 2007, WALSH submitted a written request for FMLA leave.

6.     On or about August 13, 2007, RAA extorted WALSH's resignation through an act of intimidation.  RAA notified WALSH that in the event she did not submit her resignation, RAA would report WALSH's serious health condition to the Illinois Department of Professional Regulation.  As a result, WALSH was constructively discharged, as WALSH submitted her resignation while under extreme duress caused by the unlawful extortion of RAA.  WALSH would not have resigned but for the unlawful act of intimidation by RAA.

7.     Subsequent to August 13, 2007, WALSH repeatedly attempted to revoke her unlawfully extorted resignation given under duress and RAA failed and refused to accept a revocation thereof.

5

8.    As a direct and proximate result of the unlawful extortion committed by RAA, WALSH sustained damages, as WALSH would not have submitted her resignation but for the duress caused by the unlawful extortion. WALSH sustained damages which include lost salary, the value of lost employment benefits, pain, suffering, emotional distress and impaired future earning capacity.

9.    RAA's extortion was willful, wanton, and done with the intent to deprive WALSH of her salary and employment benefits. As a result thereof, RAA should be responsible for punitive damages in addition to compensatory damages.

WHEREFORE, WALSH seeks judgment against RAA for an amount in excess of $50,000.00 for compensatory damages, punitive damages and costs of suit.

Glenn R. Gaffney
Attorney for Nancy Walsh

### JURY DEMAND

NANCY WALSH demands trial by jury to the extent applicable on all Counts to this Complaint.

Glenn R. Gaffney
Attorney for Nancy Walsh

Glenn R. Gaffney (6180598)
Justin R. Gaffney (6281428)
Gaffney & Gaffney
1771 Bloomingdale Road
Glendale Heights, IL 60139
(630) 462-1200

# EMPLOYMENT AGREEMENT

AGREEMENT, entered into as of September ___, 2000 at Rockford, Illinois, between ROCKFORD ANESTHESIOLOGISTS ASSOCIATED, L.L.C., a limited liability company, hereinafter sometimes referred to as "the Employer", and Nancy Walsh, CRNA of South Beloit, Illinois, hereinafter sometimes referred to as "the CRNA".

## WITNESSETH:

WHEREAS, the Employer is engaged in the practice of medicine in the field of anesthesiology in Rockford, Illinois, and requires the service of a certified registered nurse anesthetist ("CRNA"); and

WHEREAS, the CRNA desires to be employed by said Employer as a certified registered nurse anesthetist specializing in the administration of anesthesia;

NOW, THEREFORE, IT IS UNDERSTOOD AND AGREED:

1. Except as otherwise provided herein, the Employer shall employ the CRNA for a term of twelve (12) months which shall begin _10/16-23/_, 2000, and continue until _10/16/2001_, 2001, and on a year to year basis thereafter, at a compensation of $50.00 per hour payable at such times during the term as the Employer shall determine.

2. During each calendar year, the CRNA shall be entitled to receive one week's compensated sick leave, one (1) working day compensated vacation accrued at the rate of each 80 hours worked and one (1) working day with compensation for each 416 hours worked to attend medical meetings. Any accrued but unused vacation shall be reimbursed to the CRNA at the hourly rate (based on an eight hour day) on the anniversary of the commencement date of this Agreement. However, failure to complete the initial term of this agreement shall forfeit the right to receive any reimbursement for accrued unused vacation. The vacation and study periods shall be fixed by the Board of Managers of the Employer. In addition, the Board of Managers, at its sole discretion, may grant additional vacation periods in five-day increments up to a total of fifteen (15) days or a leave of absence for good cause shown without compensation.

3. The CRNA shall devote his/her entire professional efforts to the interests of the Employer at such times or upon such schedules as may be fixed by the Employer, however CRNA may limit her schedule not to exceed 32 hours per week, and he/she shall not engage in the private practice of his/her profession during the term of this Agreement other than through his/her employment by the Employer.

4. The CRNA shall not engage any employee or enter into any contractual obligations with any person which might in any way constitute a charge against or any obligation of the Employer without the consent of the Employer.

5. The Employer shall fix the charges and rates for the CRNA's services.



PLAINTIFF'S
EXHIBIT

A.

6. The Employer and its member-physicians have devoted considerable effort toward the development of the Employer's goodwill in the community and with referring physicians and hospitals, and irreparable harm will be incurred by the Employer and each of its members individually in the event the CRNA should compete with the medical practice which the Employer has established, particularly in the Illinois Counties of Winnebago, Boone, DeKalb, McHenry, Stephenson, Whiteside, and Ogle. The CRNA agrees that for the twenty-four (24) month period following the date of his/her termination of employment by the Employer, he/she will not become associated with, directly or indirectly, any practice, business or other activity, either as a stockholder, partner, investor (other than a publicly-held corporation in which he is not an officer, director or employee), sole proprietor, agent, employee or consultant, which is in any way competitive with the business of the Employer; it being intended by the parties that for the agreed period the CRNA will perform no act which may confer any competitive benefit or advantage upon any enterprise competing with the Employer. The Employer is actively engaged in the providing of anesthesia services in the territory hereinafter specified, and it is therefore agreed that the foregoing restrictions shall be operative only in those areas and not elsewhere. The territory covered by this agreement includes solely the Illinois counties of Winnebago, Boone, DeKalb, McHenry, Stephenson, Whiteside, and Ogle. If the CRNA, upon termination of this agreement, violates the restrictive covenant contained in this paragraph, the parties acknowledging that it would be impracticable or extremely difficult to fix the actual damages resulting therefrom, the CRNA, being in breach of said covenant, shall, in addition to forfeiting any compensation as provided in paragraph 1, pay the Employer the sum of $200,000 in liquidated damages, and not in the nature of a penalty, which amount must be received by the Employer prior to the CRNA's first working day as or with a competitor of the Employer. If the CRNA fails to pay this amount within said time period and breaches said covenant, then, in that event, the CRNA understands and agrees that the Employer shall have the right to enjoin the CRNA, in addition to any other rights the Employer may have, and it shall be entitled to all of its costs and reasonable attorneys' fees in any such action to enforce this or any other provision of this Agreement.

7. As additional consideration for the execution of this Agreement, upon reaching an average of thirty work hours per week (which will be reviewed weekly), the Employer will obtain and defray the costs of insurance policies issued by companies selected by the Employer which will provide coverage in the following fields: Major medical expenses, income during periods of disability due to accident or illness, and group life insurance. The above coverage will be provided on the condition that the CRNA can qualify for such coverage at regular rates. Additionally, Employer shall reimburse CRNA for up to $2,000.00 per annum for attending qualified CME courses and meetings.

8. <u>Termination of Agreement</u>. Notwithstanding anything herein contained to the contrary, this Agreement will immediately terminate upon the happening of any of the following events:

(a) In the event CRNA completely neglects his duties or devotes more than the time allowed to other interests for a continuous period of more than thirty (30) days.

(b)  In the event CRNA shall be guilty of fraud, dishonesty or other acts of misconduct in the rendering of professional medical services on behalf of the Employer.

(c)  In the event CRNA shall fail or refuse to faithfully or diligently perform the provisions of this Agreement or the usual and customary duties of a CRNA;

(d)  A bona fide decision by the Employer to terminate its business and liquidate its assets.

9.  Either party may terminate this Agreement, with or without cause, upon one hundred twenty (120) days written notice of termination.

10.  This is a "full-time employment agreement" as defined in Section 4.01 of the Articles of Organization of the Employer.

Early Termination of Employment: Upon the CRNA's self-termination of employment before the end of the  first year of employment, the CRNA's termination shall be subject to the following:

Accrued vacation days that have not been taken at the time of CRNA's notice of termination will not be reimbursed.  Vacation days taken in excess of those accrued shall be reimbursed at the rate of $408.00 per day.

11.    Upon termination of the CRNA's employment for whatever reason (except death or disability) CRNA shall be required to apply for and purchase the "reporting or tail endorsement" from Corporation's insurance carrier covering any claims made against the CRNA and/or corporation after termination of employment.  In the event the CRNA fails to provide evidence of the purchase of such reporting or tail endorsement the Corporation may purchase same and the CRNA shall reimburse the Corporation for the cost thereof plus any additional costs, including reasonable attorney's fees, for obtaining reimbursement.  The Corporation may, at its sole discretion, purchase said coverage for him and set off against the amounts otherwise due him herein the premiums paid therefore.

12.  This Agreement shall supersede and terminate any  presently existing agreement between the parties.

IN WITNESS WHEREOF, the Employer has caused these presents to be signed and sealed by its President by authority of its Board of Managers and the CRNA has hereunto set his hand and seal as of the date first above written

ROCKFORD ANESTHESIOLOGISTS
ASSOCIATED, L.L.C.

BY: _W. Stephen Minore_ FCP

W. Stephen Minore, M.D., F.C.C.P., C.P.E.
Its President

Dated: _Oct 3, 2000_

THE CRNA

_Nancy Walsh CRNA_
Nancy Walsh, CRNA

Dated: _9-30-00_

# EMPLOYEE BENEFIT PROGRAMS

## Insurance/Retirement Plans

RAA currently provides the following Employee Benefit Plans for eligible CRNAs:

- Group Health, Vision, Dental Insurance

- Life Insurance

- Accidental Death and Dismemberment Insurance

- 401(K) Retirement Plan

- Pension Plan

The requirements for enrollment and eligibility for each of these plans vary, and are determined by the applicable plan documents. Contact the Comptroller for information relative to the retirement and pension plans. Contact the current insurance representative for information relative to the group health, life or death and dismemberment policies when the insurance plan documents do not answer your questions. The Comptroller will identify the agent for you. RAA reserves the right to amend, modify, alter, or terminate any of these plans at any time. If an employee wishes to review the applicable benefit booklets and plan documents or wants more information about any of these plans, he or she should contact the Payroll Administrator.

PLAINTIFF'S
EXHIBIT
B.
tabbies

22

**Disability Insurance**

Disability Insurance: RAA provides disability insurance for its CRNAs who qualify. Refer to the employment contract or insurance policy documents for further information or contact the Comptroller.

**Holidays**

Rockford Anesthesiologists Associated provides one day paid time off to regular full-time employees for each of the following holidays:

> New Year's Day
> Memorial Day
> 4th of July
> Labor Day
> Thanksgiving Day
> Christmas Day

Holiday benefits are not paid to an employee on a Leave of Absence or on leave under the Family Medical Leave Act.

Employment anniversary dates are used in determining eligibility for benefits.

For the purposes of holiday pay, "regular full-time employees" are those who are scheduled to work an average of 32 hours per pay period.

## Vacation/Continuing Medical Education (CME) Paid Time Off

Annual Vacation/CME: RAA provides CRNAs annual paid time off for vacation and CME activities based on employment status, years of service, and employment contract. CRNAs hired during the year will have their vacation/CME time prorated for the portion of the year worked. The vacation/CME hours allocated to each CRNA are combined and placed in the vacation hours bank at the beginning of each calendar year (or at the beginning of employment). The hours available are usually reflected on each payroll stub.

Vacation Scheduling: A vacation planning calendar will be maintained by the CRNA Scheduler. The calendar will be available for vacation requests at all regular CRNA meetings and through contact with the CRNA Scheduler. All vacation requests should be made in writing (see attached form) and submitted to the CRNA Scheduler and the RAA Scheduling Coordinator. All vacation requests must be approved by RAA management based on staffing needs.

Number of CRNAs for Simultaneous Vacation: The RAA Board of Managers determines the number of CRNAs who may take vacation at the same time.

Request for Time Off Without Pay: Requests for additional time off without pay (after all vacation/CME time is depleted) must be submitted in writing to the RAA President and may be approved solely at his discretion.

Unused Annual Vacation: Any remaining hours in the CRNA's vacation bank at the end of each calendar year will be paid out.

Termination of Employment: Upon termination of employment, accrued, but unused vacation/CME time will be paid out.

**Sick Time Policy**

Annual Sick Time Allocation: At the beginning of each calendar year, each full-time CRNA will be allocated 5 paid sick days (40 hours) for use during the calendar year. If the CRNA begins employment during the year, the sick time will be prorated for the months worked. These days are intended for short, unexpected illness/injury of the CRNA employee.

Sick Time Notification: A CRNA who is unable to report to work due to illness or injury should immediately notify the Charge MD at the site where he/she was scheduled to work. The RAA Scheduling office and Charge MD should also be contacted regarding each additional day of absence.

Attendance Records/Monitoring: It is the responsibility of the employee's immediate supervisor to monitor and maintain a record of their attendance. If an employee has a record of excessive tardiness or absences from work, the problem will be discussed with the employee as soon as it is noted. Based on the employee's past attendance record, and information obtained from the discussion, the supervisor will take appropriate action. When appropriate, disciplinary action will be taken (see Attendance Policy).

Healthcare Provider Certification: A certification under the Family Medical Leave Act will be required to verify the illness or injury when the employee is absent for more than three (3) consecutive work days. The certification form may be obtained from human resources.

Family Medical Leave Act (FMLA) Bank Accrual: At the end of each calendar year, the sick time hours remaining for each full-time CRNA will be combined with a contribution from RAA of an amount representing fifty percent (50%) of the sick hours remaining and the combined total will be rolled over into an FMLA bank of hours for each individual (i.e. CRNA has all 40 hrs of sick time left at year end, RAA adds another 20 hrs and the total of 60 hrs is rolled into the FMLA bank; if a CRNA had only 16 hrs of sick time remaining, RAA would add 8 hrs and a total of 24 hrs would be rolled into FMLA bank).

FMLA Bank Maximum Accrual: FMLA bank maximum accrual is a total of 30 paid days or 240 hours.

FMLA Bank Usage: FMLA bank hours may be paid when an employee has been absent for more than three (3) consecutive work days and the absence is approved under FMLA criteria (see FMLA policy).

Termination of Employment: Upon termination of employment, any accrued sick time or FMLA time is forfeited and will not be paid out to the employee.

25

## Professional Liability Insurance

<u>Liability Insurance:</u> Professional medical liability insurance is provided for the CRNA by RAA and is underwritten by an insurer selected by the board of managers.

<u>Legal Counsel:</u> The insurer provides legal counsel to the CRNA in the event of a medical malpractice claim. Expenses incurred as a result of professional medical malpractice litigation will be paid by RAA.

<u>Reporting Legal Service/Action:</u> Any court order, summons, disciplinary action, sanction, or notice of a lawsuit received by a CRNA must be reported to the President or the board of managers within three (3) business days.

<u>Depositions:</u> Legal counsel is also provided when a CRNA is called for a deposition in a case in which they are not named as a defendant. The CRNA must notify the President if summoned. The CRNA must not voluntarily agree to a deposition as these matters are to be handled by legal counsel. Any pending depositions are scheduled by the attorneys and CRNA/MD involved. These depositions are scheduled in an effort to provide the least disruption of clinical patient care.

<u>Risk Management:</u> CRNAs must report any unusual/critical/adverse/potentially litigious event to the President as soon as possible after the occurrence.

# FAMILY AND MEDICAL LEAVE (FMLA)

## Leave

In Accordance with the Family and Medical Leave Act of 1993, RAA/MPMS/MRS has established a policy that will allow up to twelve weeks of unpaid leave in a twelve-month period:

- For an employee's own serious health condition that makes the employee unable to perform the functions of the employee's job;
- For a serious health condition of an employee's child, spouse, or parent where the employee is needed to care for that family member;
- Upon the birth of a child to care for the child; or
- Because of the placement of a child with an employee for adoption or foster care.

The twelve-month period will begin on the first day of leave for the employee.

## Eligibility

In order to be eligible for Family and Medical Leave, an employee must have worked for RAA/MPMS/MRS:

- For at least twelve months; and
- For at least 1,250 hours during the year preceding the start of the leave.

## Return to Work

Unless otherwise permitted by law, at the end of the approved Family and Medical Leave, the employee will be offered restoration to the same position he or she held when leave commenced or to an equivalent position. RAA/MPMS/MRS may choose to exempt certain highly compensated employees from this requirement and not return them to the same or equivalent position.

An employee whose Family and Medical Leave exceeds twelve weeks within a twelve-month period will not be guaranteed a job upon return from the leave, unless otherwise required by law.

An employee who fails to return to work at the end of an approved medical leave will be considered as having voluntarily terminated.

RAA/MPMS/MRS require that upon returning from leave due to an employee's serious health condition, the employee must provide Certification from his or her health care provider that the employee is able to resume work and that the employee is fit for duty with regard to the serious health condition that caused the employee's need for Family and Medical Leave.

Family and Medical Leave (FMLA) continued:

## Request for Leave

Employees must provide thirty days' prior notice if the leave is foreseeable. If an employee is unable to provide such notice, notice must be provided as is practicable.

An employee undergoing planned, medical treatment will be required to make a reasonable effort to schedule the treatment to minimize disruptions to RAA/MPMS/MRS's operation.

Family and Medical Leave request forms are available from the Human Resource Department. Requests for Family and Medical Leave should be made by completing a form and returning it to the Human Resource Department.

## Certification

An employee that requests a Family and Medical Leave for a serious health condition must provide RAA/MPMS/MRS with certification from a health care provider.

The Human Resource Department has certification forms for the health provider to complete. The forms must be fully completed.

The employee should furnish the required certification when requesting leave or soon after the leave is requested, but not more than fifteen calendar days from the start of the requested leave, unless it in not practical under the particular circumstances. During the leave, RAA/MPMS/MRS may also require that the employee obtain recertification of the medical condition supporting the dispute.

RAA/MPMS/MRS have the right to require an employee to obtain an opinion by a health care provider designated and paid for by RAA/MPMS/MRS either before or during the leave. If there is a disagreement, a third health care provider will settle the dispute.

## Disability/Workers' Compensation Benefits

Employees on a Family and Medical Leave due to their own serious health condition may be eligible for payments from other sources such as workers' compensation, state disability or disability insurance, if any. Employees should ask their manager if they think they are eligible for these benefits.

## Intermittent Leave

If an employee requests intermittent leave, it may be necessary for RAA/MPMS/MRS to transfer him or her to another position that will better accommodate an intermittent or reduced schedule.

Family and Medical Leave (FMLA) continued:

## Substitution of Paid Leave

Employees taking Family and Medical Leave to care for a child, spouse, or parent with a serious health condition or for their own serious health condition must use all of their available accrued and unused sick time and FMLA bank hours, personal days, vacation and Paid-Time-Off (PTO) as part of the leave.

Employees on Family and Medical Leave for the birth or the placement of a child must use all of their available accrued and unused vacation, personal days and Paid-Time-Off (PTO) as part of the leave.

## Benefit Continuation

RAA/MPMS/MRS will continue to maintain group health insurance coverage for the employee and, where applicable, for his or her dependents during the Family and Medical Leave, up to a maximum of twelve weeks in a twelve-month period. If applicable, employees must arrange to pay the premium contributions they previously had deducted in order to continue group health or other insurance for themselves and, where applicable, their dependents during the Family and Medical Leave.

If an employee fails to return to work at the end of the Family and Medical Leave, RAA/MPMS/MRS may require the employee to reimburse it for the amount RAA/MPMS/MRS paid for the employee's health insurance premiums during the leave.

## OTHER LEAVES OF ABSENCE

It is the policy of Rockford Anesthesiologists Associated to grant leaves of absence to all eligible employees on a nondiscriminatory basis in accordance with all applicable local, state and federal laws.

Leaves of absence will be considered in cases of military duty or bereavement. Unless specifically provided otherwise, all leaves of absence are available only on an unpaid basis.

Requests for leaves of absence must be made in writing as far in advance as possible to the employee's manager and the administrator. Granting of leaves of absence will depend upon the needs of the business and the nature of the request.

If an employee accepts other employment or fails to return to work on the next regularly scheduled workday following the expiration of the approved leave of absence, the employee will be considered to have voluntarily resigned.

**Military Leave** - Employees who enter the armed forces of the United States will be granted extended leaves of absence without pay in accordance with federal and state laws governing such leaves.

An employee who is a member of the National Guard or of a reserve component of the armed forces will, upon furnishing a copy of the official orders or instructions, be granted military training leave. Training leaves will not, except in an emergency or in the event of extenuating circumstances, exceed two weeks a year, plus reasonable travel time.

**Victim's Economic Security and Safety Leave**-An employee who is eligible under the Illinois Victim's Economic Security and Safety Act shall be entitled to unpaid leave of absence in strict accord with the provisions of that Act. Return from said leave of absence, insurance benefits (subject to timely receipt of any required employee contribution), continuing accumulation of seniority, certification requirements and coordination with any other leave of absence, paid or unpaid, shall either be as strictly required by the Act or, if not strictly required by the Act, at the discretion of RAA. All information required to be provided to RAA shall be maintained in the strictest confidence unless the disclosure is 1) requested or consented to in writing by the employee; or 2) otherwise required by applicable law.

**Jury Duty** - Employees called upon to serve on jury duty will be granted time off with their lengths of service retained. RAA will pay the difference between the employee's regular salary and any compensation paid for jury duty. To receive this jury duty pay, an employee must present a copy of the Jury Duty Notice as soon as it is received. Utilization of a court call-in system, if available, is required. Notify the RAA Scheduling Office immediately if you are released from Jury Duty; notify the Scheduling Office as soon as you become aware that more than one day of service will be required and the probable duration of the service. Submit any monies you receive from your Jury Duty to human resources at RAA.

30

**Bereavement Leave** - Regular, full-time employees who have suffered the loss of an immediate family member may apply for up to three days of paid Bereavement Leave. An "immediate family member" is defined as an employee's spouse, parent, child (including adopted and step children), sibling, father-in-law, or mother-in-law. Requests for Bereavement Leave must be submitted to the employee's manager, and may be granted at discretion.